UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| SCHMID PIPELINE CONSTRUCTION, INC., <br>     Plaintiff and Counterclaim Defendant, <br><br> v. <br><br> SUMMIT NATURAL GAS OF MAINE, INC. <br>     Defendant and Counterclaim Plaintiff. | ) ) ) ) ) ) ) ) ) ) ) ) |

      1:13-cv-00464-GZS

**RECOMMENDED DECISION ON PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM COUNT IV**

In this action, Plaintiff/Counterclaim Defendant Schmid Pipeline Construction ("Schmid"), a Wisconsin corporation, and Defendant/Counterclaim Plaintiff Summit Natural Gas of Maine ("Summit"), a Colorado corporation, assert claims arising out of a contract for the construction and installation of the "Kennebec Valley Pipeline Project." The matter is before the Court on Plaintiff's Motion to Dismiss Count IV of Defendant's Counterclaim (Motion to Dismiss, ECF No. 9).[1] Through its motion, Schmid argues that Summit's counterclaim for negligent misrepresentation is barred by the economic loss doctrine. (Motion to Dismiss at 4-9.)

Following a review of the pleadings, and after consideration of the parties' arguments, as explained below, the recommendation is that the Court grant the motion.

---
[1] The Court referred the motion for report and recommended decision.

## FACTUAL BACKGROUND

In its Complaint, Schmid alleges, inter alia, that "the scope of the Work represented to Plaintiff by Defendant was significantly greater than originally estimated and budgeted for under the Contract." (Complaint ¶ 16.) Schmid, therefore, seeks to recover the increased costs for the additional work that it was required to perform. (*Id.* ¶ 27.)

In its Counterclaim, Summit alleges that Schmid misrepresented its capabilities and its ability to meet certain deadlines. (Counterclaim ¶¶ 11, 17.) In addition to its claims for breach of contract, unjust enrichment, and breach of warranties, Summit asserts a claim of negligent misrepresentation (Count IV). As part of its negligent misrepresentation claim, Summit alleges that Schmid "submitted false information to Summit regarding Schmid's expected and actual costs to perform its work on the Project," that Schmid "failed to exercise reasonable care in submitting accurate information to Summit regarding Schmid's estimated costs for its work on the Project," and that Summit "justifiably relied upon [the] information . . . in making decisions about contracting with Schmid and in making payments to Schmid for Schmid's work on the Project." (*Id.* ¶¶ 76, 78, 80).

## DISCUSSION

### A.   Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may seek dismissal of "a claim for relief in any pleading" if that party believes that the pleading fails "to state a claim upon which relief can be granted." In its assessment of the motion, the Court must "assume the truth of all well-plead facts and give the plaintiff[] the benefit of all reasonable inferences therefrom." *Blanco v. Bath Iron Works Corp.*, 802 F. Supp. 2d 215, 221 (D. Me. 2011) (quoting *Genzyme Corp. v. Fed. Ins. Co.,* 622 F.3d 62, 68 (1st Cir. 2010)). To overcome the motion, Counterclaim

Plaintiff must establish that its allegations raise a plausible basis for a fact finder to conclude that Counterclaim Defendant is legally responsible for its claims. *Id.*

**B.     Discussion**

Maine law recognizes a claim for negligent misrepresentation under the following circumstances:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Chapman v. Rideout,* 568 A.2d 829, 830 (Me. 1990) (adopting the formulation of the tort as stated in the Restatement (Second) of Torts § 552(1) (1977)). In the business context, a party that provides information can be liable when it "fails to exercise the care or competence of a reasonable person under like circumstances." *Rand v. Bath Iron Works,* 2003 ME 122, ¶ 13, 832 A.2d 771, 774-75. In Maine, the liability in question is measured by the economic interest at stake, sometimes described as the "lost bargain." *Jourdain v. Dineen*, 527 A.2d 1304, 1307 (Me. 1987) (quoting *Wildes v. Pens Unlimited Co.*, 389 A.2d 837, 841 (Me. 1978) (discussing action for "deceit")). Consequently, the measure of damages in tort for misrepresentation is the same as the measure of damages for breach of contract. *Williams v. Ubaldo*, 670 A.2d 913, 917 (Me. 1996) (breach of contract damages are designed to put the injured party in the position it would have been in absent breach, or the "benefit of the bargain"); *Deering Ice Cream Corp. v. Colombo, Inc.*, 598 A.2d 454, 456 (Me. 1991) (breach of contract damages generally are measured by injured party's expectation interest or the benefit of its bargain).

In this case, Summit alleges that prior to the creation of the contract, Schmid provided Summit with false information regarding its ability to perform the work that was the subject of the

parties' pre-contract negotiations. The issue generated by Schmid's motion is whether the economic loss doctrine bars Summit's negligent misrepresentation claim.

"The economic loss doctrine 'marks the fundamental boundary between the law of contracts, which is designed to enforce expectations created by agreement, and the law of torts, which is designed to protect citizens and their property by imposing a duty of reasonable care.'" *Banknorth, N.A., v. BJ's Wholesale Club, Inc.*, 394 F. Supp. 2d 283, 286-87 (D. Me. 2005) (quoting *Fireman's Fund Ins. Co. v. Childs*, 52 F. Supp. 2d 139, 141 (D. Me. 1999)).

In the context of a product liability claim, the Maine Supreme Judicial Court, sitting as the Law Court, adopted the economic loss doctrine. In *Oceanside at Pine Point Condominium Owners Association v. Peachtree Doors, Inc.*, the Law Court held that in the absence of evidence that the product caused personal injury or property damage, the plaintiff could not maintain an action for negligence or negligent misrepresentation. 659 A.2d 267, 270 (Me. 1995). The Court reasoned that the plaintiff's "claims for economic damages – 'the costs of all repairs, renovation, corrections and replacements related to the Defendant's defective performance of its contract' – are properly addressed under a warranty theory." *Id*. at 271. *Oceanside* is the lone case in which the Law Court applied the doctrine. The Law Court thus has not applied the doctrine other than in the product liability context.

This Court has had limited opportunity to consider whether under Maine law, the economic loss doctrine would preclude recovery in tort in other contractual situations. Nearly ten years ago, this Court applied the doctrine to preclude recovery in tort where parties to commercial contracts sought to recover in both tort and contract. *Me. Rubber Int'l v. Envtl. Mgmt. Grp., Inc.*, 298 F. Supp. 2d 133, 136 (D. Me. 2004) (dismissing negligent misrepresentation claim based on statements contained in an environmental report); *see also Gannett v. Pettegrow*, 2005 WL

763276 (D. Me. Feb. 17, 2005) (adopting Magistrate Judge summary judgment recommendation[2] and dismissing negligent misrepresentation claim arising out of the construction of a custom-built yacht). In another case, the Court, after noting that states which have adopted the economic loss doctrine "vary widely in their understanding of the doctrine's scope," denied the defendants' request for dismissal of the negligence claim of a debit card issuer for losses allegedly incurred when a third party stole card numbers from defendants' computers. *Banknorth, N.A.*, 394 F. Supp. 2d at 287 ("not immediately clear in what circumstances Maine's economic loss doctrine might extend to parties not in privity").

More recently, this Court declined to apply the economic loss doctrine to preclude recovery in tort where customers of a grocery store sought to recover in tort and contract for damages allegedly caused by a third-party's theft of the customers' electronic payment data. While acknowledging that "in some jurisdictions, courts have applied this 'economic loss doctrine' to prevent tort recovery altogether for purely economic damages incurred by parties to a contractual relationship, unless there is also personal injury or physical property damage," the Court observed that "the doctrine started out much narrower, and the Maine Law Court has never had occasion to broaden its application. According to the Law Court's last statement on the topic in 1995, the economic loss doctrine stands for the proposition that '[c]ourts generally … do not permit tort recovery for a defective product's damage to itself.'" *In re Hannaford Bros. Co. Customer Data Security Breach Litig.*, 613 F. Supp. 2d 108, 127 (D. Me. 2009).[3] Because the plaintiff's claim did not involve a defective product, the Court determined that "[f]rom the Law Court's recent

---

[2] *Gannett v. Pettegrow*, No. 1:03-cv-00228-JAW, 2005 WL 217036, at *8 (Jan. 28, 2005). The Court accepted and adopted the recommended decision in the absence of any objection. 2005 WL 763276.

[3] On appeal, the First Circuit Court of Appeals affirmed in part and reversed in part, without addressing the merits of the Court's discussion of the economic loss doctrine. *Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 153 (1st Cir. 2011).

pronouncement (1995) on the economic loss doctrine … Maine law does not give Hannaford a defense to tort recovery for negligence." *Id*. at 127-28.

As a review of the cases suggests, given the limited scope of the issue in *Oceanside*, and given the Law Court's lack of further comment on the doctrine for almost twenty years, whether the doctrine applies beyond a product liability claim is uncertain. This Court's analyses in *Maine Rubber International* and *Banknorth* are instructive as to whether the Law Court would apply the doctrine to the circumstances of this case. In explaining its decision to apply the doctrine in *Maine Rubber International*, the Court wrote, "[t]hese [parties to the case] were two commercial entities able to bargain over the terms of their agreement, and they entered into a written contract to govern their relationship. There was no risk of harm either to people or to other property. The critical issue here, as in [*Oceanside*], is value and quality of what was purchased." 298 F. Supp. 2d at 137-38. In *Banknorth*, the Court, after referencing the Court's decision in *Maine Rubber International*, observed that with service contracts the parties are generally in privity, and noted that the nature of the parties' relationship would likely govern the doctrine's applicability. 394 F. Supp. 2d at 287.

The reasoning and observations of the Court in *Maine Rubber International* and *Banknorth* are sound. Consistent with basic tort and contract principles, where a dispute exists between parties to a bargained-for commercial contract[4] and their dispute is over the "value and quality of what was purchased," in the absence of any facts of a special relationship between the parties that might give rise to duty in tort (e.g., a fiduciary relationship), an aggrieved party's recourse should be governed by the terms of the contract. Whether a court formally extends application of the

---

[4] Where parties of equal bargaining power negotiate the terms of a contract, the parties have the opportunity to and presumably do allocate risk between the parties. In other words, where the parties have fairly negotiated their respective obligations and potential liabilities, the law need not impose any extra-contractual duties upon the parties.

economic loss doctrine to bar tort recovery, or whether a court determines that recognition of a duty in tort under the circumstances is not appropriate,[5] the result is the same.

In this case, a review of the complaint and counterclaim reveals that the parties, two commercial entities, negotiated and renegotiated the services and material contract that is the subject of the parties' dispute. In addition, in its counterclaim, Summit does not allege a special relationship between the parties that would generate an independent duty in tort. Finally, Summit's claim is plainly one that seeks the "value and quality of what was purchased." That is, through its counterclaim, Summit contends that it did not receive the benefit of its bargain with Schmid. Under the circumstances alleged, Summit's claim should be limited to the consequences of Schmid's purported failure to perform under the terms of the parties' contract. Summit, therefore, has not stated a claim upon which it can recover in tort.[6]

## CONCLUSION

Based on the foregoing analysis, the recommendation is that the Court grant the Motion to Dismiss Count IV of Summit's Counterclaim (ECF No. 9).

---

[5] As the Court in *Banknorth* observed, "other states appear to view the economic loss doctrine as a proxy for determining whether a defendant owes a special duty to the plaintiff, and undertake a foreseeability analysis in applying the doctrine." 394 F. Supp. 2d at 287 (citations omitted). In many ways, a court's decision on the application of the economic loss doctrine in a particular situation is based on the court's assessment as to whether the circumstances warrant the imposition of a tort duty, rather than based on the nature of the claimed loss (i.e., whether the party seeks to recover for an economic loss).

[6] Dismissal would be appropriate if the Court were to conclude that under the circumstances, Summit did not owe a duty in tort, or if the Court applied the economic loss doctrine. To the extent that the Court applied the economic loss doctrine, if the recommendation is adopted, the Court's decision would be consistent with the Law Court's reasoning in *Oceanside*, 659 A.2d at 271 (holding that "claims for economic damages … are properly addressed under a warranty theory"), and this Court's analysis in *Banknorth*, 394 F. Supp. 2d at 287 (reasoning that application of the economic loss doctrine is dependent upon the nature of the parties' relationship), and *Maine Rubber International*, 298 F. Supp. 2d at 137-138 (explaining that "the logic of [*Oceanside*] encompasses the relationship here [professional services agreement]" where the "critical issue … is value and quality of what was purchased"). While the result in *In Re Hannaford* may appear to be inconsistent with this recommendation, it is noteworthy that the Court did not repudiate its decision in *Maine Rubber International* and insofar as *In Re Hannaford* did not involve parties to a bargained-for commercial contract, but rather a series of consumer transactions conducted in the absence of any written contract, the result is understandable and the case is distinguishable and not inconsistent with the above reasoning.

7

**NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

June 23, 2014