UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

SCHMID PIPELINE CONSTRUCTION INC., )
)
    Plaintiff, )
)
)
v. )
) 1:13-cv-00464-GZS
)
SUMMIT NATURAL GAS OF MAINE, INC., )
)
    Defendant )

**ORDER ON MOTIONS**

This matter is before the Court on Defendant's Motion for *In Camera* Review (ECF No. 37), and Plaintiff's Motion to Strike Defendant's Motion for *In Camera* Review (ECF No. 38). Both motions focus on an email communication that Plaintiff claims is protected from discovery by the attorney-client privilege, but was inadvertently disclosed during discovery. As explained below, after consideration of the parties' arguments, the Court denies Plaintiff's Motion to Strike, and denies Defendant's Motion for *In Camera* Review.

**DISCUSSION**

In discovery, Plaintiff inadvertently produced to Defendant an email communication that is within the general scope of the attorney-client privilege. Through its motion, Defendant asks the Court to review the communication to determine whether the communication falls within an exception to the privilege. In particular, Defendant contends that the Court's review is appropriate because the email communication was made in "furtherance of fraud" as contemplated by the exception to the privilege set forth in Maine Rule of Evidence 502(d)(1)[1], which provides:

---
[1] Federal Rule 501 provides that in a civil case, state law governs the scope and applicability of the privilege.

(d) Exceptions. There is no privilege under this rule:

(1) If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud[.]

In response to Defendant's motion, Plaintiff asks the Court to strike and, therefore, not consider the motion. Plaintiff maintains that the Court should not consider the motion because Defendant did not first obtain leave of court to file the motion as required by Local Rule 26(b). Plaintiff also argues that the motion should be stricken because Defendant did not appropriately manage the privileged material.

Plaintiff's Motion to Strike

Local Rule 26(b), upon which Plaintiff relies in part, prohibits the filing of a "discovery motion" without "the prior approval of a judicial officer." The Rule also requires that before a party requests the court's intervention on a discovery dispute, the party must attempt to resolve the issue directly with the opposing party. Defendant did not seek leave of court to file the motion for *in camera* review.

A preliminary issue is whether the motion is a "discovery motion." Insofar as Defendant ultimately requests that the Court order the production of the email communication, Plaintiff's characterization of the motion as a "discovery motion" is not unreasonable. However, because the motion is not the typical discovery motion (e.g., motion to compel, motion for protective order), and because Defendant first requests an *in camera* review of the email communication before the Court considers the possible production of the document, Defendant's belief that Local Rule 26(b) was inapplicable is understandable.[2] The applicability of Local Rule 26(b) thus is somewhat

---

[2] The Court, however, prefers (and thus encourages) that parties confer prior to filing most disputed pretrial issues or otherwise seeking the court's intervention.

uncertain. Given that uncertainty, the Court will not strike the motion based on Defendant's failure to comply with the Rule.

The Court also is not persuaded that Defendant's management of the documents after production warrants the striking of the motion. While Plaintiff correctly notes that in *Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶ 20, 742 A.2d 933, 941, the Maine Law Court endorsed a process by which the recipient of an inadvertently disclosed document is to return the document, the process does not preclude Defendant's motion for *in camera* review.

### Defendant's Motion for *In Camera* Review

Recognizing the attorney-client privilege as "the oldest of the privileges for confidential communications known to the common law," and as a privilege designed "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice," the United States Supreme Court held that under certain circumstances, a court could conduct an *in camera* review to determine whether the crime-fraud exception to the attorney-client privilege is applicable. *United States v. Zolin*, 491 U.S. 554, 562, 565 (1989) (citation omitted). The Court cautioned: "Before engaging in *in camera* review to determine the applicability of the crime-fraud exception, the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *Id*. at 572 (internal question marks and citation omitted). The Court further explained that a court "should make that decision [whether to conduct an *in camera* review] in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through *in*

*camera* review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply." *Id*.

The applicability of the crime-fraud exception depends on "whether the client intended to use the attorney's services, or advice, to commit or plan to commit an ongoing or future crime or fraud." *In re Motion to Quash Bar Counsel Subpoena*, 2009 ME 104, ¶ 17, 982 A.2d 330, 337. Therefore, "[t]he exception may apply … if the lawyer's services are used to actively conceal past wrongdoing." *Id*. ¶ 16.

Defendant contends that it has demonstrated a factual basis to support a good faith belief that the crime-fraud exception might apply. More specifically, Defendant argues that the email communication, which occurred before the execution of the contract in dispute in this action, likely contains information that will establish that to induce Defendant to enter into the contract, Plaintiff fraudulently represented its willingness to reduce its profit margin. In support of its argument, Defendant relies in part on other communications, before and after the execution of the contract, between and among Plaintiff's representatives.

Preliminarily, Plaintiff contends that the review is not warranted because the email communication is not relevant to any of the pending issues in the case. Although Defendant's counterclaim does not currently include a specific fraud claim,[3] the parties' pre-contract communications are nevertheless potentially relevant to the parties' intent and expectations. In other words, at this stage of the proceedings, the Court cannot conclude that the email communication is not reasonably calculated to lead to the discovery of admissible evidence.

Plaintiff also maintains that Defendant has failed to show that the crime-fraud exception likely applies because the representation that is alleged to be fraudulent was made before the

---

[3] Defendant seeks to amend its counterclaim to add a fraudulent inducement claim. (ECF No. 41.)

privileged email communication. The crime-fraud exception, however, is not limited to future conduct. As explained above, the exception can also apply if an attorney's services are used to conceal past conduct. *Id.* [4]

The central issue is whether, after considering the facts and circumstances of this case, the Court is convinced that Defendant has demonstrated that the email communication may contain evidence that the crime-fraud exception applies. As the Supreme Court noted in *Zolin*, when determining whether to permit the *in camera* review, the Court should consider factors such as the volume of documents, the importance of the documents, and the likelihood that the review will establish that the crime-fraud exception applies. *Zolin*, 491 U.S. at 572. While the number of documents in this case is insignificant, the remaining considerations militate against an *in camera* review.[5]

The alleged fraud for which Defendant seeks the production of the email communication is Plaintiff's representation that it would reduce its profit margin. Defendant maintains that internal non-privileged documents support its claim of fraud. In fact, on the basis of information that Defendant has in its possession, Defendant has moved to amend its counterclaim to assert a fraud claim. Under these circumstances, therefore, the requested information could be considered cumulative of the information contained in Plaintiff's internal communications that are in Defendant's possession. More significantly, however, the primary issue on the potential fraud

---

[4] Plaintiff further contends that Defendant is precluded from securing the Court's *in camera* review because Defendant's counsel improperly handled the inadvertently disclosed email communication. The Court is not persuaded by Plaintiff's argument. First, the recipient of an inadvertently disclosed document often does not realize that the document is potentially privileged until the recipient has read the document. In addition, neither *Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, 742 A.2d 933, upon which Plaintiff relies, nor Maine Rule of Professional Responsibility 4.4, which defines a lawyer's obligations when in receipt of an inadvertent disclosure, prohibits counsel from seeking a court determination of the applicability of an asserted privilege. In fact, Rule 4.4 explicitly authorizes counsel to "promptly present the writing to a tribunal under seal for a determination of the claim."

[5] Because the volume of documents is unrelated to the nature and substance of the disclosed information, the Court considers the volume of documents to be the least significant among the factors that the Court should consider.

claim is whether Plaintiff did or did not reduce its profit margin after representing that it would reduce the margin. Presumably, that issue will be determined based on financial information (e.g., records that reflect Plaintiff's project costs) that is otherwise discoverable. That is, if Defendant can demonstrate that Plaintiff did not reduce its profit margin, given Plaintiff's prior representation to the contrary, Defendant could prove fraud without the email communication. In addition, based on the information currently before the Court, the Court does not understand the email communication to contain financial information that would be relevant to whether Plaintiff in fact failed to reduce its profit margin as represented. The email communication thus does not appear to be essential to Defendant's claim of fraud.

Finally, and in the Court's view most importantly, the facts upon which Defendant relies to support its request for an *in camera* review do not establish a likelihood that the crime-fraud exception will apply. Defendant relies primarily on the fact that the email communication occurred during the course of the parties' contract negotiations (i.e., after the alleged misrepresentation and before certain internal communications of Plaintiff that Defendant contends are inconsistent with the alleged misrepresentation). That a party consulted its counsel during the course of the negotiation of a substantial contract is expected. If the Court were to conclude, solely on the basis of the temporal relationship between the alleged fraud and the consultation with counsel, that the consultation with counsel likely included discussion of a plan to commit or to conceal fraud, the Court would essentially have to conclude that in most fraudulent inducement cases, an *in camera* review of attorney-client communications during the course of the contract negotiations would be warranted. Such a conclusion would be inconsistent with the Supreme Court's caution in *Zolin*, and would have an unwanted chilling effect on attorney-client communications during contract

negotiations. The evidence of record, therefore, is insufficient to generate an *in camera* review of the email communication.

In sum, given the significance of attorney-client privilege, Supreme Court precedent understandably requires courts to scrutinize the circumstances under which a party seeks the *in camera* review of and the ultimate production of information that is otherwise privileged. Here, after considering all of the relevant circumstances, the Court concludes that an *in camera* review of the email communication is not warranted.

## CONCLUSION

Based on the foregoing analysis, the Court (1) denies Plaintiff's Motion to Strike, and (2) denies Defendant's Motion for *In Camera* Review.

## CERTIFICATE

Any objections to this Order shall be filed in accordance with Fed. R .Civ. P. 72.

*So Ordered.*

/s/ John C. Nivison  
U.S. Magistrate Judge

Dated this 21st day of November, 2014.